# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**MARGARITA RODRIGUEZ-
BONILLA,**

**Plaintiff,**

**v.**                                    **Case No. 6:21-cv-428-JA-GJK**

**WAYNE IVEY, KELLY HAMAN,
GEORGE FAYSON, RICHARD
ZIMMERMAN, ROBERT
WAGNER, JR., FREDDY
CEDENO, ALLISON
BLAZEWICZ, DEBORA
NADEAU, AYANA ROBINSON,
YOLANDA JONES and ARMOR
CORRECTIONAL HEALTH
SERVICES INC.,**

**Defendants.**

---

### ORDER

Plaintiff Margarita Rodriguez-Bonilla, as personal representative of the

estate of decedent Gregory Lloyd Edwards, originally filed this action in state

court. (Doc. 1–3). Following removal and transfer of the case to this Court (Docs.

2 & 4), Rodriguez-Bonilla filed her First Amended Complaint. (Doc. 26). She

later filed a Second Amended Complaint (the Complaint). (Doc. 42). Defendants

Debora Nadeau, Ayana Robinson, Yolanda Jones, and Armor Correctional

Health Services, Inc. (collectively, the Armor Defendants) now move to dismiss

1

the bulk of the claims against them and to strike portions of the Complaint as immaterial, impertinent, or scandalous. (Doc. 57). For the reasons explained below, the Motion to Dismiss is granted in part and denied in part, while the Motion to Strike is denied.

I.     **Background**[1]

This case concerns the treatment and eventual death of Gregory Lloyd Edwards during his detention at the Brevard County Jail Complex, a facility serviced by Defendant Armor Correctional Health Services. (Doc. 42 ¶ 161). Police officers arrested Edwards at a Walmart Supercenter in West Melbourne, Florida, on December 9, 2018.[2] (Id. ¶¶ 34–35). Edwards, a military veteran suffering from Post-Traumatic Stress Disorder (PTSD), had stopped taking his medication and was in the midst of a "psychotic episode" when he was arrested just one day before a scheduled appointment at the VA Hospital. (Id. ¶ 36). Upon arrest, the officers determined that Edwards posed a danger to himself or others and should be evaluated by mental health professionals. (Id. ¶¶ 37–38). But instead of taking him to a Baker Act receiving facility they transported Edwards to the county jail. (Id. ¶ 39).

---

[1] The Background section is derived from the allegations of the Second Amended Complaint (Doc. 42), which are taken as true for the purpose of ruling on the Rule 12(b)(6) Motion to Dismiss.

[2] A separate case in this Court, No. 6:20-cv-2235, concerns the conduct of the West Melbourne police officers who arrested Edwards. These cases have been consolidated solely for the purposes of discovery and mediation.

The Brevard County Jail Complex, fully aware of Edwards's mental state, agreed to take custody of him, even though it was not "equipped or staffed to provide the immediate emergency medical care authorized by the Baker Act" at that time. (Id. ¶¶ 43–44). Once in detention, Edwards's mental health continued to deteriorate as he sat alone in his cell without a psychological evaluation. (Id. ¶¶ 51–56). Later, when someone came to retrieve Edwards and continue the booking process, an altercation broke out between Edwards and a number of deputies, including Defendants Wagner, Zimmerman, Cedeno, Fayson, Haman, and Blazewicz. (Id. ¶¶ 57–65). During this scuffle, the Complaint alleges, the deputies repeatedly used excessive force against Edwards, including pepper-spraying his face, "crushing twisting, and striking his body and extremities," and tasing him multiple times. (Id. ¶¶ 66–80). When the altercation concluded, the deputies handcuffed Edwards, hoisted his limp body into a restraint chair, and covered his head with a spit-mask. (Id. ¶¶ 82–90). Without removing the taser barbs from his back, decontaminating his face from the pepper spray, or performing a medical evaluation, the deputies then wheeled Edwards into a holding cell. (Id. ¶¶ 91–99). There, he "visibly struggled to breathe—like a fish out of water—his mouth open and pressed against the spit-mask material." (Id. ¶ 102).

After almost twenty minutes in the holding cell, Edwards suffered a medical emergency. (Id. ¶ 113). When they noticed that Edwards's body had

again gone limp, jail personnel—including Defendants Nadeau, Robinson, and Jones—entered the cell and attempted to revive him, first with sternum rubs and then with oxygen. (Id. ¶¶ 115–19). Although Edwards remained unresponsive, laboring to breathe, Defendants sent him to the medical unit at the jail for further evaluation rather than transferring him to the hospital for emergency medical care. (Id. ¶ 125). But when Edwards arrived at the medical unit the charge nurse "recogniz[ed] the dire situation" and "immediately advised a Sergeant to call 911." (Id. ¶ 131). Within minutes, Edwards went into respiratory arrest and was given CPR. (Id. ¶¶ 133–35). He arrived at the hospital with a hypoxic brain injury, and hospital personnel placed him on life support. (Id. ¶¶ 144–45). The following day, Edwards was dead. (Id. ¶ 146).

## II.    Legal Standards

Under Federal Rule of Civil Procedure 12(b)(6), parties may move to dismiss claims brought against them by asserting that the relevant pleading "fail[ed] to state a claim upon which relief can be granted." "Generally, federal civil complaints need only state 'a short and plain statement of the claim showing that the pleader is entitled to relief." United States ex. rel. Clausen v. Lab. Corp. of Am., Inc., 290 F.3d 1301, 1308 (11th Cir. 2002) (quoting Fed. R. Civ. P. 8(a)). "[D]etailed factual allegations" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).

In lieu of outright dismissal, Federal Rule of Civil Procedure 12(f) empowers the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."   Such action, however, is a "drastic remedy," disfavored by the courts, Augustus v. Bd. of Pub. Instruction of Escambia Cnty., Fla., 306 F.2d 862, 868 (5th Cir. 1962) (quoting Brown & Williamson Tobacco Corp. v. United States, 201 F.2d 819, 822 (6th Cir. 1953)), that will only be granted if the matter sought to be stricken "has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party," Adams v. JP Morgan Chase Bank, N.A., No. 3:11-cv-337-J-37MCR, 2011 WL 2938467, at *1 (M.D. Fla. July 21, 2011) (quoting Florida Software Sys., Inc. v. Columbia/HCA Healthcare Corp., No. 97-2866-CIV-T-17B, 1999 WL 781812, at *1 (M.D. Fla. Sept. 16, 1999)).

## III.   Discussion

The Armor Defendants move this Court to dismiss the bulk of the claims against them and to strike various factual allegations from the Complaint. The Armor Defendants raise three arguments in their Motion to Dismiss: first, they say, Count I should be dismissed against Nadeau, Robinson, and Jones because

the Complaint fails to allege that they were personally involved in any unreasonable use of force against Edwards; second, Count V should be dismissed against Armor Correctional Health Services, as the Complaint fails to plead policies, practices, or customs sufficient to bring a § 1983 claim against a government entity under <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978); and third, the medical negligence claims contained in Counts VIII–X should be dismissed against all of the Armor Defendants, as Rodriguez-Bonilla failed to comply with state law pre-suit requirements. The Armor Defendants also move the Court to strike paragraph 162, subparagraphs (d)–(x) from Rodriguez-Bonilla's Complaint, alleging that they contain immaterial, impertinent, and scandalous statements.

### A.    Count I—Fourteenth Amendment

In Count I of her Complaint, Rodriguez-Bonilla asserts a claim under 42 U.S.C. § 1983 alleging that various Defendants—including Nadeau, Robinson, and Jones—used objectively unreasonable force against Edwards in violation of his Fourteenth Amendment right to due process. (Doc. 42 ¶¶ 163–68). The basis for this claim relates to Edwards's treatment at the Brevard County Jail Complex, where some of the non-moving Defendants allegedly beat him, tased him, pepper-sprayed him, placed him in a restraint chair, and forced him to wear a spit-mask without first washing the lingering pepper spray from his face. (<u>Id.</u> ¶¶ 66–91). But none of these actions are attributed to Nadeau, Robinson, or

Jones in the Complaint. Nor is it clear from the Complaint that they were even present when the actions took place. Instead, the factual allegations against the trio relate solely to the medical care they provided or failed to provide after the altercation ended and Edwards became unresponsive in his cell.

The Armor Defendants' Motion to Dismiss correctly insists that Rodriguez-Bonilla's Complaint "has alleged no facts to support liability against Nadeau, Robinson[,] or Jones" arising from an excessive use of force against Edwards. (Doc. 57 at 7). Rodriguez-Bonilla apparently agrees, admitting in her response that she "inadvertently" included Nadeau, Robinson, and Jones among the other Defendants in Count I and conceding that the excessive force claim asserted against them "should be dismissed." (Doc. 70 at 3).

Since it is clear to all involved that the Complaint fails to state a claim against any of the Armor Defendants for excessive force, Count I is dismissed against Nadeau, Robinson, and Jones.

### B.   Count V—Fourteenth Amendment (<u>Monell</u> Claim)

In Count V of her Complaint, Rodriguez-Bonilla asserts a separate § 1983 claim against Armor Correctional Health Services,[3] this time relying on the precedent set in <u>Monell</u>.  As the Supreme Court made clear in that case, "a local

---

[3] Count V of the Complaint includes an identical claim against Brevard County Sheriff Wayne Ivey. Ivey is represented by separate counsel and has not joined this Motion to Dismiss.

government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." <u>Monell</u>, 436 U.S. at 694. A municipality[4] *may* be liable, however, where a constitutional injury is caused by that entity's own "policy or custom." <u>Id.</u> at 694. While such liability will sometimes spring from a formal, written policy in direct violation of constitutional rights—as was the case in <u>Monell</u>—a plaintiff may also succeed by showing that "final policymakers have acquiesced in a longstanding practice that constitutes the entity's standard operating procedure" or that unconstitutional decisions made by subordinates have been adopted by someone with "final policymaking authority." <u>Hoefling v. City of Miami</u>, 811 F.3d 1271, 1279 (11th Cir. 2016).

In their Motion to Dismiss, the Armor Defendants argue that Rodriguez-Bonilla has "fail[ed] to plead any of the three ways liability can occur" under <u>Monell</u>. (Doc. 57 at 8). A fair reading of the Complaint belies that claim. In paragraph 162(c) of her Complaint, Rodriguez-Bonilla alleges that Armor, "with the knowledge and consent of its policymakers, had a policy, practice, and/or widespread custom, of providing deficient medical care for the purpose of increasing corporate profits." (Doc. 42 ¶ 162(c)). If the Complaint stopped there,

---

[4] Although Armor is a for-profit corporation, not a government entity, the Eleventh Circuit has held that "[w]hen a private entity . . . contracts with a county to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state" and thus "becomes the functional equivalent of the municipality" for the purposes of § 1983. <u>Buckner v. Toro</u>, 116 F.3d 450, 452 (11th Cir. 1997) (per curiam).

it may be harder to say that it offered more than mere "'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). But Rodriguez-Bonilla goes further, pointing to specific instances in Armor's "decade long history" of government investigations, cancelled contracts, and wrongful death lawsuits related to deficient policies, practices, or customs. (Doc. 42 ¶ 162). Specifically, Rodriguez-Bonilla alleges that Armor "failed to provide medical intake, medical assessments, mental health services, physician involvement, and hospital referrals, in accordance with industry standards, resulting in injuries and/or death." (Id. ¶ 162(y)). The Complaint then links these very policies to Edwards's own constitutional injury, suggesting that Nadeau, Robinson, and Jones were adhering to these policies and practices when Edwards died and that they were a "proximate cause" of his death. (Id. ¶ 162(cc)).

Despite this, the Armor Defendants maintain that Rodriguez-Bonilla's Monell claim must fail because she "does not plead any sort of specific widespread practice or custom . . . that existed *at the facility where the occurrence took place.*" (Doc. 57 at 9) (emphasis added). The Armor Defendants cite no authority for their suggestion that a practice or custom giving rise to a Monell claim must be widespread not only within the entity itself but also at the very facility where the injury took place. Regardless, Rodriguez-Bonilla does allege just that. Prior to Edwards's death, the Complaint says, Armor and its

"final policymaker," Dr. Jose Armas, were on notice that the organization's "policy, practice, and/or custom of failing to provide medical intake, medical assessments, mental health services, physician involvement, and hospital referrals . . . was occurring *at the Jail*." (Doc. 42 ¶ 162(aa) (emphasis added)).

Read in its entirety, the Complaint alleges facts sufficient to state a plausible claim for relief under <u>Monell</u>. Rodriguez-Bonilla points to specific policies and practices related to Armor's medical intake, assessment, and treatment of individuals under their care. She then alleges facts supporting a plausible inference that these policies, whether formal or informal, were widespread at facilities serviced by Armor and that final policymakers at Armor either acquiesced to or adopted those policies. Finally, Rodriguez-Bonilla alleges that these policies were present at the facility where Edwards was held and were a proximate cause of his death. All of these allegations are currently unproven, and Rodriguez-Bonilla will need to prove them to ultimately succeed at trial. At this stage of litigation, however, a plaintiff must only allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Iqbal</u>, 556 U.S. 678 (quoting <u>Twombly</u>, 550 U.S. at 570). Rodriguez-Bonilla has met that burden. Accordingly, the Armor Defendants' Motion to Dismiss Count V of the Complaint is denied.

C.    Counts VIII–X—State Law Claims

In Counts VIII–X, Rodriguez-Bonilla alleges a series of state law violations, including medical malpractice under section 766.102, Florida Statutes (2013), and wrongful death under section 768.16, Florida Statutes (2003). The Armor Defendants argue that these claims should be dismissed because Rodriguez-Bonilla failed to comply with various pre-suit requirements mandated by Florida law. The Court finds that Rodriguez-Bonilla has satisfied the pre-suit requirements and thus denies the Armor Defendants' Motion to Dismiss Counts VIII–X.

Under Florida law, plaintiffs suing for medical malpractice must first complete a series of steps outlined in Chapter 766, Florida Statutes, the purpose of which is to "eliminate frivolous claims," Barlow v. N. Okaloosa Med. Ctr., 877 So. 2d 655, 657 (Fla. 2004), and "promote the settlement of meritorious claims early in the controversy," Patry v. Capps, 633 So. 2d 9, 11 (Fla. 1994). Before prospective plaintiffs may file a complaint, for example, they must investigate the claim and find "reasonable grounds" to believe that the defendants were "negligent in the care or treatment of the claimant" and that the claimant was injured as a result of this negligence. § 766.203(2), Fla. Stat. (2004). The plaintiffs must then "notify each prospective defendant by certified mail . . . of intent to initiate litigation for medical negligence," § 766.106, Fla. Stat. (2013), and attach a "verified written medical expert opinion" corroborating that

11

"reasonable grounds" exist to pursue the claim, § 766.203(2), Fla. Stat. Finally, the plaintiffs' lawyers must certify in the complaint that the their own "reasonable investigation" has given rise to a "good faith belief that grounds exist for an action against each named defendant." § 766.104(1), Fla. Stat. (2019).

The Armor Defendants argue that Rodriguez-Bonilla failed to satisfy these pre-suit requirements for two reasons: first, because her initial complaint did not include the necessary certificate from her lawyer and, second, because the medical expert opinions she sent to the Armor Defendants were "wholly insufficient" to corroborate a reasonable basis for her claims. (Doc. 57 at 11). As a result of these deficiencies, the Armor Defendants say, Counts VIII–X should be dismissed.

### 1.   Certificate of Counsel

As noted above, section 766.104(1), Florida Statutes, instructs that:

> No action shall be filed for personal injury or wrongful death arising out of medical negligence . . . unless the attorney filing the action has made a reasonable investigation as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant.

The burden placed on plaintiffs' lawyers by section 766.104(1) is separate from the plaintiffs' own responsibility to conduct a pre-suit investigation under section 766.203(2) and comes with the additional requirement that the

"complaint or initial pleading shall contain a certificate of counsel that such reasonable investigation gave rise to a good faith belief that grounds exist for an action against each named defendant." § 766.104(1), Fla. Stat.

Defendants point out that Rodriguez-Bonilla's initial complaint failed to include the certificate from her lawyer required under section 766.104(1). (Doc. 57 at 13). This is true, and Rodriguez-Bonilla acknowledges as much in her response. (Doc. 70 at 12). At least a month before Defendants filed this Motion to Dismiss, however, Rodriguez-Bonilla filed her Second Amended Complaint, which included the required certificate from her lawyer, Devon M. Jacob. (Doc.42 ¶¶ 4–6). At least one Florida district court of appeal has acknowledged that "the requirement of the good faith certificate is neither jurisdictional nor an essential element of the cause of action." Nash v. Humana Sun Bay Cmty. Hosp., Inc., 526 So. 2d 1036, 1039 (Fla. 2d DCA 1988). Thus, while the lawyer's pre-suit investigation is "clearly a condition precedent to filing a medical malpractice action," that condition precedent "has been fulfilled" so long as the lawyer actually conducted the investigation and certifies to that effect before the court hears a motion to dismiss. Id. at 1038.

In Nash, as here, the plaintiff failed to include a lawyer's certificate in the first two complaints. Id. at 1037. Rather than amending the complaint, however, Nash filed a standalone certificate in response to the defendants' motion to dismiss, before that motion was heard by the court. Id. The district court of

appeal held that, while the trial court was "not required to accept the certificate . . . without a motion to amend," the absence of the certificate in the complaint was "not fatal" to the action, as the lawyers were willing to certify that a pre-suit investigation had taken place. Id. at 1038–39. At worst, the court held, the trial court should have dismissed the complaint with leave to amend. Id. at 1039.

In this case, by comparison, there is no need to amend—the Complaint that the Armor Defendants seek to dismiss already contains the certificate required by section 766.104(1). While Rodriguez-Bonilla should have included this certificate in her initial complaint, her failure to do so is not fatal to her state law claims. The purpose of the certificate is to ensure that the plaintiff's lawyer conducts a reasonable pre-suit investigation and develops a good faith belief in the merits of any malpractice claim before they file a complaint. Rodriguez-Bonilla's Complaint confirms that such an investigation took place. Thus, the purpose of certification has been served.

### 2.    *Medical Expert Opinion*

The Armor Defendants also contend that Counts VIII–X should be dismissed because Rodriguez-Bonilla "failed to submit a proper medical expert opinion" pursuant to section 766.203(2), Florida Statutes. (Doc. 57 at 14). That section can be divided into two parts. The first part, like section 766.104(1), mandates a pre-suit investigation, this time by the claimant rather than the claimant's lawyer:

> Prior to issuing notification of intent to initiate medical negligence litigation pursuant to s. 766.106, the claimant shall conduct an investigation to ascertain that there are reasonable grounds to believe that:
>
> (a) Any named defendant in the litigation was negligent in the care or treatment of the claimant; and
>
> (b) Such negligence resulted in injury to the claimant.

§ 766.203(2), Fla. Stat. The second part requires that the findings of this pre-suit investigation be corroborated by a qualified medical expert:

> Corroboration of reasonable grounds to initiate medical negligence litigation shall be provided by the claimant's submission of a verified written medical expert opinion from a medical expert . . . at the time the notice of intent to initiate litigation is mailed, which statement shall corroborate reasonable grounds to support the claim of medical negligence.

Id. In this case, Rodriguez-Bonilla sent two separate corroborating opinions by a medical expert. The first opinion was contained in an affidavit and delivered to the Armor Defendants with a notice of intent to initiate litigation on December 7, 2020. (Doc. 42 ¶ 6). In it, Nurse Ashley N. Taylor reviews Edwards's medical records and jail security footage from the day he became unresponsive, outlines deficiencies in Edwards's care and treatment, and concludes that "Nadeau, Jones, and Robinson[] failed to advocate in [Edwards's] best medical interest." (Doc. 57-4 at 3).

The Armor Defendants argue that this opinion does not satisfy section 766.203(2) because it simply lists "actions or inactions of Nadeau, Robinson, and Jones that [Nurse Taylor] believe[s] violated the standard of care"

without "establish[ing] that any such negligence caused injury and/or death to Mr. Edwards." (Doc. 57 at 14). They are correct. Nurse Taylor clearly believes that the Armor Defendants' actions fell below the applicable standard of care and ends her opinion by noting that Edwards died the next day. Nowhere in this first affidavit, however, does she explicitly link these two things and confirm that there are reasonable grounds to believe that the Armor Defendants' negligence *caused* that death.

Section 766.203(2), Florida Statutes, states that the expert medical opinion must "corroborate reasonable grounds to support the claim of medical negligence." The first part of that section suggests that these "reasonable grounds" should include some reason to believe that (a) the defendants were "negligent in the care or treatment of the claimant" and (b) the claimant was injured as a result of that negligence. Id. Although the text of the statute could conceivably allow for a more permissive reading, Florida courts have consistently held that section 766.203(2) "calls for medical corroboration not only of negligence but also of injury in consequence," finding that "[w]ithout corroboration that '[s]uch negligence resulted in injury to the claimant' . . . the statutory requirements have not been met." Archer v. Maddux, 645 So. 2d 544, 546 (Fla. 1st DCA 1994) (citations omitted); see also Howell v. Balchunas, 284 So. 3d 1180, 1183 (Fla. 1st DCA 2019); Baptist Med. Ctr. of the Beaches, Inc. v. Rhodin, 40 So. 3d 112, 118–19 (Fla. 1st DCA 2010). Because Nurse Taylor's first

affidavit failed to corroborate that the Armor Defendants' negligence had any causal connection to Edwards's injury or death, it did not satisfy Rodriguez-Bonilla's obligations under section 766.203(2).

But the Court's inquiry does not end there. On May 24, 2021, apparently in response to letters from Defendants' lawyers suggesting that the first affidavit was deficient, Rodriguez-Bonilla sent a second expert opinion from Nurse Taylor. (See Doc. 57-6). In it, Nurse Taylor suggests that Defendants "were confused by the conclusions" stated in her first affidavit and that they improperly read it as "merely listing negligent conduct that had absolutely nothing to do with causing injury." (Id. at 1). To rectify this, Nurse Taylor repeats her findings from the first affidavit, this time with additional, bolded sentences linking the Armor Defendants' negligent conduct with Edwards's death. After stating again that Jones and Robinson failed to perform a necessary medical assessment of Edwards, for example, and that Nadeau failed to tell the charge nurse what had happened to Edwards before he arrived at the medical unit, Nurse Taylor concludes that these failures "delayed [Edwards's] ability to receive timely emergency medical care [and] directly caused [Edwards's] medical condition to needlessly deteriorate." (Id. at 2). Similar statements are added throughout the second affidavit.

The Armor Defendants maintain that the second affidavit is still deficient under section 766.203(2), despite these additions, because Nurse Taylor "fails to

establish *how* such negligence caused [Edwards's] injury and/or death." (Doc. 57 at 15) (emphasis in original). Here, the Court does not agree. Nothing in the text of section 766.203(2) suggests that the expert medical opinion must articulate exactly *how* a defendant's negligence caused injury to the claimant, and the Armor Defendants cite no authority for such a reading. In fact, Florida courts have repeatedly held that the expert opinion need not even explain how the defendant was negligent. See, e.g., Michael v. Med. Staffing Network, Inc., 947 So. 2d 614, 620 (Fla. 3d DCA 2007) ("The expert opinion to be supplied is not one which delineates *how* the defendants were negligent." (quoting Kukral v. Mekras, 679 So. 2d 278, 282 (Fla. 1996))). What matters for the purpose of section 766.203(2) is that the expert opinion "corroborate[s] reasonable grounds that negligence occurred and caused injury." Holmes Reg'l Med. Ctr. v. Wirth, 49 So. 3d 802, 806 (Fla. 1st DCA 2010). Nurse Taylor's second affidavit does so. Thus, Rodriguez-Bonilla has satisfied the pre-suit requirements under Chapter 766.

**D.    Motion to Strike**

The Armor Defendants also move the Court to strike paragraph 162, subparagraphs (d)–(x) from the Complaint. These subparagraphs, according to the Armor Defendants, contain "immaterial, impertinent, and scandalous statements," "unsupported by any evidence," that will lead to an "unnecessary

foray" into issues unrelated to the claims pleaded in the Complaint. (Doc. 57 at 16).

The Court disagrees.  The subparagraphs in question, found under the heading "Policy, Practice and Custom of Deliberate Indifferences to Health and Safety of Inmates," outline a series of past lawsuits, investigations, and preventable deaths associated with Armor's provision of healthcare services. Whether or not these allegations are proven at trial, their relevance to Rodriguez-Bonilla's <u>Monell</u> claim is quite clear. In fact, some of the very statements that the Armor Defendants seek to strike were referenced by this Court above in its determination that Rodriguez-Bonilla sufficiently pleaded "policies, practices, or customs" necessary to deny the Motion to Dismiss.

The Armor Defendants cannot have it both ways. They cannot argue, on the one hand, that Rodriguez-Bonilla has failed to allege a widespread practice of constitutional violations while simultaneously moving to strike such allegations as immaterial, impertinent, or scandalous. Nor can they maintain in earnest that the inclusion of these allegations will "confuse the issues," or "otherwise prejudice" Armor. See <u>Adams</u>, 2011 WL 2938467, at *1. Given the nature of a <u>Monell</u> claim, allegations of repeated past misconduct by Armor do not confuse the issue; they are *essential* to the issue, as "isolated incidents are

insufficient to establish a custom or policy" under <u>Monell</u>. <u>Depew v. City of St.</u> <u>Mary's</u>, 787 F.2d 1496, 1499 (11th Cir. 1986). Such allegations are only prejudicial to Armor insofar as they bolster Rodriguez-Bonilla's claim that it was engaged in a "persistent and widespread practice" of providing deficient medical care to inmates, rather than a single, isolated incident with respect to Edwards. <u>Id.</u> However inconvenient this may be for Armor's defense, it is not a sufficient reason to strike the allegations under Federal Rule of Civil Procedure 12(f).

## IV.   Conclusion

Accordingly, it is **ORDERED** as follows:

1.      The Motion to Dismiss (Doc. 57) is **GRANTED in part and DENIED in part**. The motion is **GRANTED** as to Count I with respect to Nadeau, Robinson, and Jones. Count I of the Second Amended Complaint (Doc. 42) is **DISMISSED with prejudice** insofar as it is brought against Defendants Nadeau, Robinson, and Jones only. The motion is **DENIED** in all other respects.

2.      The Motion to Strike (Doc. 57) is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida, on October ____, 2021.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record